Calling the next case on the calendar, that's Cottonwood Environmental Law Ctr. v. Greg Gianforte. Good morning, Your Honors. Good morning. My name is John Meyer. I'm here on behalf of Plaintiff Appellant Cottonwood Environmental Law Ctr. Before I get started, I'd like to save three minutes for rebuttal, please. All right. Cottonwood is here today asking the court to allow Yellowstone Bison to freely roam on federal land. I'm sorry. I'm having trouble hearing you. Can you speak up a bit? Sure. Is that better? Yes. Cottonwood is here today to ask the court to allow Yellowstone Bison to freely roam on federal land. We're asking for an order that enjoins the federal government and state of Montana from hazing bison that are on federal land. We're also asking the court to issue an order that requires the federal defendants to prepare and complete a supplemental environmental impact statement by a date certain. So, you know, before we get to all of that, you've got a sort of like a preliminary issue you've got to deal with, which is the district court dismissed your case, never got to the injunction issue, but dismissed your case under Rule 12b-6 for failure to state a claim. Yes, Your Honor. So why did the district court err with respect to your first count and your second count? Your Honor, the district court granted the federal defendants motion to remand without vacater in this case. And so that is that issue and the district court's denial of our injunctive relief. I'm confusing the cases. My comments were related to the next case. Okay. So that's right. I apologize. In this case, Your Honor, Cottonwood Environmental Law Center moved for preliminary injunctive relief. And a week before the district court had a scheduled evidentiary hearing on that injunction request, the federal government asked for a voluntary remand without vacater. And the district court then granted that remand without vacater before holding any sort of hearing. And the court's factual findings is that vacating the interagency bison management plan, it would leave the parties without any sort of operative bison management plan in place. And in this case, Cottonwood did not ask the district court to vacate the entire interagency bison management plan. We asked for very narrow relief that the court enjoin hazing of bison under the interagency bison management plan. So the district court could have, should have, ordered a partial vacater of the interagency bison management plan. And then should the district court have granted your injunction? Your Honor, I don't think the district court even had to go there. Because if the court could have granted us partial vacater, there's no need to grant injunctive relief. And that is under the Monsanto and eBay cases from the U.S. Supreme Court, Your Honor. And the partial vacater would have resulted in what? It would have resulted in the federal government and the state of Montana enforcing the portion of the interagency bison management plan that allows them to haze yellowstone bison behind an arbitrary line. So that line, that line where bison are allowed to cross is set by the interagency bison management plan. We're just asking for an injunction or a vacater of that portion of the bison plan. So now let me see if I got this right in the right case. The district court dismissed the case as to the governor of Montana or the state of Montana. Is that right? Yes, Your Honor. Yes, that's absolutely right. Okay. So where did the district court, why did the district court err in doing that? Your Honor, the governor of Montana signed a record of decision with the federal government saying that they would manage yellowstone bison under the same record of decision. The environmental impact statement says that they have to manage that together. The record of decision that the governor signed, I thought that was based under Montana environmental regulations and statutes. Your Honor, they signed a joint agreement saying that they would manage bison under the federal interagency bison management plan. And they both agreed that managing bison under the same plan was the only way that they were going to get real cooperation. But aren't they trying to work cooperatively in this endeavor? Well, Your Honor, not necessarily because as the state of Montana said during the last time we were here, even if the federal courts enjoined the federal government from hazing bison that are on federal land, the state of Montana will not. They're saying the federal court has no jurisdiction over the state to enjoin hazing on federal land. And that's all we're asking for is to stop hazing on federal land. We're not concerned about state land. And that's what takes this case out of the Lujan case, friends for animals. Because in that case, the plaintiffs were seeking to enjoin hunting on state land. And we're not concerned about state land at all in this case, Your Honor. We're only concerned about federal land. So if your injunction had been granted, you would have had to demonstrate a likelihood of success on the merits. Yes, Your Honor. I suppose for a vacatur, you'd also have to show that there was a reason that your relief should be granted. And what is the reason? There is significant new information before the federal government, Your Honor. There is new science regarding brucellosis. So the Interagency Bison Management Plan was put in place to prevent bison from transmitting brucellosis to cattle. And there has never been a documented case of a bison transmitting brucellosis to a cow. Meanwhile, there are elk transmitting brucellosis to cows all over the state of Montana. And so we said that's new information. And the federal government has actually agreed. They have said we need to prepare a new environmental impact statement because of this new information. So, counsel, in light of the procedural posture of this case, then what's left? You wanted to basically trigger their NEPA obligations to consider new information. Now the court has remanded it and ordered the government to do so. The government has now voluntarily agreed to prepare a new policy or a new report that takes into account whatever new information it is that you claim needs to be considered. So what's left on the injunctive relief claim that's not on appeal? Yes, Your Honor, a timeline. We're asking the court to issue a hard timeline. We're asking the court to issue an order that requires the federal government to complete the NEPA analysis by an enforceable timeline. And we're also asking the court to enjoin the federal government and the state of Montana from hazing bison on federal land while that analysis is complete. Now, the federal government has said, well, we don't need to enjoin the management of bison because we're going to complete the EIS. But as this court has heard, it's been whatever, 10 years and they've still they keep saying they're going to do it and they haven't done it. And so there's no, we're suffering harm. Neighbors of bison slaughters are suffering harm. The wildlife services have said someone's going to be killed because there are so many people hunting in such a small area. The former superintendent of Yellowstone National Park, who is scheduled to testify as a witness on our behalf, said we need to get more bison out across the landscape and that will allow more hunting opportunities. Let me just clarify as your time's running out. So it's not it's not a revision of some sort of current plan, right? Are you conceding that the plan that's in place right now controls? And the only thing that's left with regard to injunctive relief is the imposition of a reasonable timeline. Your Honor, we are asking for a reasonable timeline and we're also asking for injunctive relief in the interim until that analysis. What is the injunctive relief? I guess that's what I'm trying to pin down. We're asking for injunctive relief that enjoins the federal government and state of Montana from hazing bison on federal land until the analysis is complete. And what authority are we going to rely on in issuing that injunctive relief? Your Honor. It's not a NEPA claim, right? Under NEPA, the government has to consider the new information. That portion is taken care of in the remand order. So now you're saying order a timeline, impose a timeline, and issue an injunction that affects the current plan. Is there case law authority that we were able to do that? Your Honor, the court has broad equitable relief to ensure that no one gets injured while the new analysis is complete. But in order to get an injunction, would you have to demonstrate that the likelihood of success on the merits, which is to say, I guess, that the new NEPA plan would eliminate hazing? Your Honor, the likelihood of success in the merits is whether there is, in fact, new information before the agency. And we say that there is new information. So whether the injunction should issue, that goes to the balance of harms. And both parties briefed that issue before this court. The federal government said there's four harms that dictate why an injunction should not issue. They said, first, there's going to be property damage. And we're only asking to enjoin hazing on federal land. So the issue of property damage to private individuals doesn't come into place. The second reason is the federal government is saying there's competition for grass with the livestock. So maybe I have this wrong. You don't have to demonstrate that it's likely that the new NEPA will eliminate hazing. What you're trying to do is eliminate hazing. Yes, Your Honor. And so it seems to me you would have to give the court a reason to believe that when the dust settles, that the hazing will be eliminated. Your Honor, we have to give the court a reason for why hazing should be eliminated in the interim. And so that goes to the... What is that reason? That reason is because by hazing bison, you are putting human life at risk. Okay. And where's that on the record? That is from the U.S. Excuse me. The Montana Fish and Wildlife Park has said someone's going to be killed. The former superintendent at Yellowstone National Park said we need to get more bison on the landscape to ensure public safety. We have public safety issues. Okay. Can I ask you a question? Do federal officials actually conduct hazing operations? Yes, Your Honor. The record has photos where federal officials and state officials are jointly riding horses next to each other, hazing bison that are on forest surface land back in the Yellowstone National Park. And that was in the last two years. So the other issue that the federal government has said dictates against enjoining this hazing is there are safety concerns. They said we need to continue hazing bison in the Yellowstone National Park because if we let bison roam free, there's going to be safety issues. And the truth of the matter is that there's already huge safety issues. There's people shooting across roads. There's people shooting near houses. In one instance, there was a hunter shooting at another hunter. They were so angry that they don't have an opportunity to hunt. And so by enjoining this dangerous hazing, you're going to allow Yellowstone bison onto federal land. You're going to have more hunting opportunities for everyone involved. And ultimately, that satisfies the tribes. It brings more tourists when you have more bison on national forest land. It's a win for everyone involved. Council, let me ask you to clarify something because I didn't see in the complaint that you made a claim based on unreasonable delay. And it's not in the prayer for relief. Is it somewhere else in the record that I'm missing? I thought that was in the other case where the issue of unreasonable delay was put front and center and not in your case. Your Honor, we asked for the Forest Service to prepare supplemental environmental impact statement. And that goes straight to the 706-1. It's an unreasonable delay. They haven't prepared the SEIS. All right. Thank you. I know you wanted to save a little bit of time. Thank you, Your Honor. Good morning, and may it please the court. I'm Jeremiah Langston, appearing on behalf of Defendant Appley, Montana Governor Greg Gianforte. And I first want to address a question that Judge Peyes presented. The governor of Montana has indeed signed a record of decision, but he did so under the Montana Environmental Policy Act, otherwise known as MEPA. He did so in 2004 regarding hunting and did so in 2015 concerning tolerance zones. The IBMP memorializes a division of labor in these environmental reviews. The federal government evaluates environmental impacts inside the park, and Montana is left to evaluate environmental impacts outside the park for bison. So it needs to be clarified that Montana never signed a record of decision implementing MEPA, the National Environmental Policy Act. This court should affirm the district court's dismissal of Montana from this lawsuit for three reasons. First, Cottonwood has abandoned any argument that comports with this court's remand instructions in Cottonwood 1. Second, this court's case law does not mention federal land as having any bearing on the sufficiently interrelated standard. And third, Cottonwood's arguments are inconsistent with this court's guidance in Fund for Animals. Turning to my first argument, Cottonwood abandoned its one appropriate argument for appeal. In particular, it confuses the issues of cause of action and remedy. Here, the alleged cause of action subjecting Montana to this lawsuit is MEPA. In contrast, the potential remedy available under this cause of action is limited by the Ex Parte Young Doctrine. As that Fund for Animals case demonstrates, these are two independent bases for rejecting the type of relief that Cottonwood requests. This court's remand instructions in Cottonwood 1 make clear that this case concerns the cause of action question and the sufficiently interrelated standard. Because Cottonwood's briefs do not even mention the sufficiently interrelated standard with regard to the federal court's jurisdiction over Montana, this court should find that Cottonwood abandoned its one appropriate issue for review. Turning to my second argument, Cottonwood presents a new argument that this court can enjoin actions on federal lands. But this isn't what Cottonwood asked the district court to do. It requested that the district court enjoin actions in or near Yellowstone Park in their third amended complaint. Besides this, Cottonwood fails to identify any case law in which the presence of federal land can make a non-federal actor subject to MEPA. The apparent thrust of Cottonwood's argument is that the federal government ought to have complete regulatory control over bison on federal lands outside the park. But this court already rejected this argument in Western Watersheds Project v. Salazar. Cottonwood's argument also ignores the well-established principle that absent a federal statute to the contrary, a state maintains its police power over animals within its territory. This is why deer and elk hunters are subject to Montana hunting laws, even when they go hunting on federal land in Montana. And this brings me to my third and final point. Cottonwood disregards this court's findings in Fund for Animals. In particular, Cottonwood argues the sufficiently interrelated issue is now moved because Montana has agreed to participate in NEPA analysis on remand. But this is contrary to this court's reasoning in Fund for Animals that Montana should not be penalized for voluntarily agreeing to cooperate with the federal government. Here, too, Montana should not be punished for voluntarily agreeing to participate in the NEPA analysis on remand. And there are good public policy reasons for reaffirming this finding. Bison are wild animals that ignore political boundaries like national park orders. Thus, encouraging collaboration between Montana and the federal government is good policy and is in the best interest of Yellowstone bison. If this court were to agree with Cottonwood's arguments, it would create a disincentive for non-federal actors to cooperate with the federal government in the future. For the same reasons, vacating the IBMP is a bad idea because the IMBP provides a collaborative framework for managing bisons. And with that, I urge this court to affirm the district court's order dismissing Montana from this lawsuit and happy to answer any questions the judges might have. All right. Thank you very much, counsel. Hello again. Erica Kranz for the federal defendants. There are a couple really preliminary things I think it's important to clear up here. One is Cottonwood's counsel raised a lot of argument in his opening statement about hunting, the effects of hunting. But of course, the action that Cottonwood is complaining about here and seeking to enjoin is hazing. Those are distinct things. Hazing is essentially herding bison. Particularly what we're talking about here is herding to keep them in these tolerance areas. Hunting largely is the killing of bison for sport or for meat. And it's done both by state-permitted hunters but largely by tribes that have treaty rights to hunt on unrestricted lands. Ms. Kranz, it's my understanding. I'm sorry, I don't have it in front of me. But my recollection from reading the complaint is that they mentioned both hunting and hazing in their complaint. I wonder what you're driving at. Well, what I'm driving at is the relief that they're requesting at this point is an end to hazing. But then the harm they're complaining about is hunting. It's not clear that the relief they're seeking would address the harm they're alleging. That's what I'm getting at. They're insinuating that there's a connection, but they certainly haven't shown that the harm they're alleging would likely be addressed by the relief they're seeking. The idea that, well, if bison just roam more freely, people will shoot them in broader areas, that is not at all clear. The location where this bison hunt is occurring, most of the bison hunt is occurring, is right outside the park where the bison leave the park. And then it's a very popular hunting location. It's not at all clear that people would change their minds. Would you say that Cottonwood has satisfied the standard necessary to get an injunction, or there has to be some reason for partial vicature? Would you say that Cottonwood has met those standards? No, not at all. In the previous case, we talked a little bit about the many merits part of the element of those analyses. But even looking just at the equitable factors, I mean, clearly what Cottonwood wants here is essentially an end to bison management. And one thing they say justifies that is, for instance, this article they cite that says that there hasn't been a documented case of transmission of brucellosis from bison to cattle. That article also says that that is because management is working. Management has been successful at keeping bison and cattle away from each other, at least in ways where they can transmit disease. The idea that because of that success, you would then eliminate the program as part of a judicial remedy, not even as the result of an administrative process, that doesn't make any sense. It also would undermine one of their other arguments, which is that the public has become more tolerant of bison over time. That tolerance is a result of the good management. If you just wipe that management out, as one of the federal declarants explained, that could very well fundamentally undermine that increased public tolerance that we're seeing, which we agree is a good thing. We want to encourage that by continuing good management. I also want to point out, of course, that Cottonwood didn't make this fake it or argument before the district court. And I don't think there is any reason that you should reach it here, because they have not made any argument about why this case presents some exception from the normal standard that courts of appeals don't consider arguments raised for the first time on appeal. This argument is the first time they are attempting to develop any argument that the agency should be put on an enforceable deadline for doing this remand. Let me take you back just a little bit before we talk about the deadline issue. So as I understand their concern, Cottonwood's concern is that they want the Forest Service to do a supplemental EIS on the bison management plan because of all this new information. And apparently, as we've talked before, the government recognizes that they need to do that, and that process is now underway. But I also understood him to say, well, in the meantime, we should enjoin the courts, the district court should have enjoined the hazing operation, because that's what's the root of the, you know, that's the concern. Let me ask you a couple of questions on that. Does the federal government engage in hazing outside of Yellowstone National Park? Very limited. I want to continue answering that, but I do want to correct one statement in your question. The new NEPA analysis is being headed up by the National Park Service, which has jurisdiction over not the Forest Service. So federal government does very limited hazing of bison outside the park, and that's conducted by APHIS, and it is done at the state's request. So really, this is a state activity. Sometimes the state asks for help, and the federal government offers it. But really, it is a state activity, even when it takes place on national forest lands. And who does the hazing activity when it's outside the forest land? That would also be the state. If it's, I guess if it's in the park, it would be done by the Park Service, but that is, there's really very little hazing within the park. What we're talking about in this case is the hazing that occurs outside the park to sort of maintain bison within the tolerance area. And how do you describe the relationship between the state of Montana and the federal government, the Forest Service, in this operation? In terms of hazing? No, just in terms of the overall management of the bison. Well, the state and the federal government have really pretty distinct things that they're in charge of. So when the bison are inside of the park, they're within the exclusive jurisdiction of the Park Service. Once they head outside the park, they're within the jurisdiction of the state, even when they're on federal lands. So the state is in charge of hazing the bison, maintaining them within that tolerance area, which the state has said. It's in charge of administering the state hunt. And so they really have these distinct authorities, excuse me, distinct things that they do. And the bison management plan is basically a framework for cooperation, for sharing information so that one hand knows what the other is doing. And they do this coordination through meetings that happen a couple times a year where the state, the federal government, and the tribal partners also get together and talk about what their plans are. And come to agreement by consensus about how to work effectively together to achieve the shared goals for bison management. But that doesn't mean that every action that happens under the plan or that's described in the plan is a federal action. No more than every action that happens under the plan is a state action. And the state has independent authority to haze bison. That's just part of its authority as manager of wildlife and livestock. Can the state do that on just federal land outside? You know, there's federal land I'm sure that may not be part of the force, but outside of the national park. Yes, I think absent some withdrawal or some preempting federal law that would prevent them from doing so, yes, the state could do that. But in this particular case, their actions are governed by the terms or the framework of the management plan, correct? Yes, they are, yes. At least in terms of the issues that's raised by the plaintiff and the corrective action that the plaintiffs are seeking in terms of their request for injunctive relief. So what I'm getting at is in order to grant the plaintiff the relief that they seek with regard to hazing or trapping, slaughtering of bison in the Yellowstone Park, that would essentially be tantamount to modification of the bison management plan? I want to make sure I understand. If you were to enjoin the state's hazing, which is really the only thing we're talking about here, they're not talking about the trapping operation within the park. Actually, I'm looking at the complaint, ER 32. The prayer for relief seeks an injunction to enjoin the defendants from future hazing, harassing, trapping, or slaughtering of any bison in or near Yellowstone Park until the NEPA deficiencies are cured. As I was talking to counsel about, well, what's left here? The court basically granted the remand, and now in terms of jurisdiction, I do think we have jurisdiction to review whatever's left in the injunctive relief denial order of the district court. And so in order to kind of effectuate what the plaintiffs are asking for, is that tantamount to a modification of the bison management plan? Because under that plan, the different zones are set up, and the state then issues the hunting licenses. And so I take it that that's why the governor's in this lawsuit in the first place, because there are certain state actions that are being taken. And then, of course, there's management by the federal government. So the scope of the injunctive relief that plaintiff is asking for, I would think, reaches both the actions taken by the state as well as the actions taken by the federal government. And is it all under this management plan that we're talking about here? So I want to be clear. They asked for more in their complaint, but the issues have narrowed since then. The injunctive relief that they asked for in their motion for preliminary injunction and what they have pursued on appeal now only has to do with the state hazing on federal land. So that's really all we're talking about here. Although that activity is addressed in the IBMP, it is not entirely clear that vacating the IBMP would strip the state of its ability to conduct hazing. Because that is a state activity that doesn't necessarily require the coordination that the bison management plan allows. And that is one of the reasons that we think that you should not vacate the plan. Because, of course, this coordination is a good thing. It makes it possible for the state and federal government and the tribes to have a complete picture of what the others are doing. And that predictability, of course, is good for everyone. So, as I think has been mentioned here, Cottonwood, really what they asked for was more NEPA. They're getting more NEPA. And the district court did not abuse its discretion in determining that this management plan should remain in place while that remand is happening. And so we ask that you affirm that decision. All right. Thank you. Your Honors, we are asking the court to enjoin the federal government and the state of Montana from hazing bison on federal land. This is not just a state issue. We're asking the court to enjoin both the state and the federal government. If the court decides that it should enjoin the federal government, that doesn't give us all the relief we're requesting. Because the state of Montana said that it's still going to haze bison. So, essentially modifying the bison management plan that's in place right now? Your Honor, you can partially vacate that bison management plan. You can enjoin the federal government from implementing portions of that bison management plan. There's several ways to go about granting the request for relief. In terms of the state of Montana, the property clause of the U.S. Constitution has been interpreted by the U.S. Supreme Court to say that the federal government can control what happens on federal land. And that's Claude B. v. New Mexico. And so for the court to enjoin the federal defendants but dismiss Montana as a party or say that Montana's not enjoined when Montana says it's going to continue hazing, is just a blatant violation of the authority the court has. Millions of bison used to roam across the state of Montana. And today we have fewer than 6,000 in a tiny area right outside of Yellowstone National Park. We're asking the court to enjoin the state of Montana and the federal government from hazing bison on federal land and require the government to complete a supplemental environmental impact statement by date certain. Thank you, Your Honor. All right. Thank you very much, counsel, for your helpful arguments today. The matter is submitted.
judges: PAEZ, NGUYEN, Eaton